### In re McGREW BROTHERS SAWMILL, INC., an Oregon corporation, Debtor.

### NORTHWEST ACCEPTANCE CORPORATION, an Oregon corporation, Plaintiff–Appellant,

### v.

### Paul LANSDOWNE, Trustee, Defendant–Appellee.

### Bankruptcy Case No. 681–06122–H7. Civ. No. 89–900–FR.

United States District Court, D. Oregon.

Oct. 5, 1989.

Barbee B. Lyon, Albert N. Kennedy, Tonkon, Torp, Galen, Marmaduke & Booth, Portland, Or., for plaintiff-appellant Northwest Acceptance Corp.

Mark W. Perrin, Perrin, Gartland, Doyle & Nelson, P.C., Eugene, Or., for defendant-appellee Paul Lansdowne, Trustee for McGrew Bros. Sawmill, Inc.

## OPINION

FRYE, District Judge:

In the matter before the court, plaintiff-appellant, Northwest Acceptance Corporation (Northwest), appeals from the Memorandum Opinion and Order of the United States Bankruptcy Court of April 6, 1989 denying Northwest's motion for administrative priority status.

## FACTS

In its Memorandum Opinion of April 6, 1989, the bankruptcy court determined that the bankruptcy code contemplates that a corporation in the position in which Northwest finds itself may qualify for a priority claim to administrative expenses under section 503(b)(1)(A). (Memorandum Opinion, p. 7). The bankruptcy court found that the bankruptcy estate benefited from all of the post-petition advances at issue, but concluded that "under the rather unusual facts of this case NWAC [Northwest], in fact, has not demonstrated it is entitled to a § 503(b) priority." (Memorandum Opinion, p. 8).

The bankruptcy court concluded that it would not be equitable to allow Northwest priority status under section 503(b)(1)(A) because Northwest failed "to prove how it actually applied all the proceeds arising from inventory sales made post-petition." (Memorandum Opinion, p. 10). The bankruptcy court concluded:

The fact the parties stipulated to the amounts of pre-petition debt, post-petition advances, amounts collected on pre- and post-petition accounts receivable and the net loss between the post-petition advances and post-petition receivables does not eliminate this fatal problem for NWAC. Even given these facts the truth remains that NWAC had total discretion, through a system never explained to the court, to allocate funds coming in, under a cross-collateralization agreement, between what appears now to have been a total debt which was undersecured. Under those circumstances this court believes it is inequitable to other unsecured creditors to allow NWAC priority status under § 503(b)(1)(A). McGrew's full debt to NWAC should be treated as a nonpriority unsecured claim.

(Memorandum Opinion, p. 11).

Northwest argues that the bankruptcy court erred in not accepting the stipulated facts in the pretrial order which set out the amount of post-petition claim. Northwest points out that the bankruptcy court acknowledged that Northwest had satisfied the legal requirements of section 503, and that the stipulation of facts contained in the pretrial order adequately satisfies the factual basis for the section 503 claim. Northwest argues that the bankruptcy court's failure to accept the facts as agreed to in the pretrial order constitutes an error of law. Northwest urges the court to re-

view the issue on appeal *de novo*, to give effect to the facts agreed to in the pretrial order, and to give Northwest section 503 protection.[1]

The trustee appellee argues that the bankruptcy judge had the discretion to determine whether or not it is appropriate to award the appellant an administrative expense priority and that this court should not disturb the exercise of that discretion.

## DISCUSSION

■ Although a claim may meet the implicit requirement of section 503(b)(1)(A), namely that any claims under this section have a distinct post-petition character, the bankruptcy court has broad discretion in determining whether to allow administrative expense priority. *In re Dant & Russell, Inc.*, 853 F.2d 700, 707 (9th Cir.1988). That discretion, however, is limited by the clear intent of section 503(b)(1)(A), which is to give priority to the actual and necessary costs of preserving the estate. *Id.*

■ The bankruptcy court found that the claim made by Northwest met the qualifications of a valid administrative expense, but that Northwest failed to explain to the bankruptcy court the system used to allocate funds which came in post-petition. Northwest asserts that it was error for the bankruptcy court to penalize it for failing to provide detailed proof as to the system used to allocate post-petition funds when the amount of those post-petition funds were not in dispute.

## RULING

The pretrial order in this case provides, in relevant part, the following agreed facts, the relevance of which is not disputed:

A summary of pre-petition and post-petition debts and advances of Northwest to McGrew is as follows:

1. Pre-petition debt—$626,437.97 less $55,038.02 in transit for a balance of $571,399.95.
2. Collection of pre-petition accounts receivable $264,655.94
3. Sale of invenotry[sic]—$60,000 less expenses of liquidation.
4. Post-petition advanced to McGrew (net) $671,349.33. Post-petition accounts receivable generated, $650,730.85. Post petition accounts receivable collected, $492,638.99. Net loss to Northwest from post-petition advances less post-petition receivables, $178,710.34.

(Pretrial Order, p. 5).

The bankruptcy court determined that post-petition financing provided by Northwest met the conditions for a section 503(b) claim but refused to accept the stipulation of the parties in the pretrial order because there was no evidence as to the system used to allocate those funds. This case involves a legal determination as to the effect of the pretrial order. As such, this court's review is *de novo*. *United States v. McConney*, 728 F.2d 1195, 1201 (9th Cir.), en banc, *cert. denied*, 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).

The trustee and Northwest stipulated to the application of the Federal Rules of Civil Procedure and entered into a pretrial order under the local rules of the United States District Court. After satisfying the requirements as to the character of their post-petition financing, Northwest was entitled to rely upon the stipulation agreed upon by the trustee as to the advances less post-petition receivables. Northwest was not required to present evidence as to the system used to arrive at these figures when the figures were not a contested issue. The agreement of the parties in the pretrial order was sufficient to provide the factual basis for the amount of the administrative expense claim.

## CONCLUSION

The bankruptcy court correctly concluded that Northwest's net loss from post-petition financing qualified for an administrative priority claim under section 503(b)(1)(A). The stipulation of the parties contained in the pretrial order relieved

---

1. Northwest has withdrawn its claim of priority status for the amounts representing sale of inventory and is pursuing its claim for a total of $118,710.34.

Northwest of proving the amount of the net loss at the hearing.

The order of the bankruptcy court filed April 6, 1989 denying administrative priority status is vacated. The motion for administrative priority status under 11 U.S.C. § 503(b)(1)(A) filed by Northwest is granted in the amount of $118,710.34.